## MACOMBER *v.* COTTRELL.

COMPROMISE AND SETTLEMENT — RESCISSION FOR FRAUD — EXECUTORS AND ADMINISTRATORS.

> Complainant filed a bill in equity to vacate a compromise agreement made with the executor of his deceased sister's husband, by which complainant released all claim to his sister's estate as her heir at law, for the payment of a certain sum of money. The bill averred that the executor suppressed a certain account book, having entries showing the amount of money in the hands of deceased belonging to the sister. By the terms of the compromise it appeared that during the life of testator, complainant had made claim to his share of the sister's estate, that the testator claimed the same by gift from his deceased wife, and finally conveyed certain real estate and canceled a certain note in settlement of the claim. The bill contained no averment that complainant was misled by misrepresentations of the facts. *Held,* that no case was made for the interposition of equity.

Appeal from Macomb; Erskine, J. Submitted April 12, 1910. (Docket No. 64.) Decided July 14, 1910.

Bill by Allen E. Macomber against George Cottrell and others, heirs at law of William Cottrell, deceased, to set aside an assignment of a claim, and for an accounting. From an order overruling a demurrer, defendants appeal. Reversed, and bill dismissed.

*Fred A. Baker* (*William S. Jenney* and *Harrison W. Geer,* of counsel), for complainant.

*Stevenson, Carpenter & Butzel* and *James G. Tucker,* for defendants.

HOOKER, J. The bill in this case is filed by the complainant to establish his claim as heir of one Georgia Macomber Cottrell to a share of her estate, which he alleges to have gone into the hands of William Cottrell, her hus-

band, who survived her, and for which, it is claimed, he never accounted. A demurrer to the bill was overruled, and defendants have appealed.

We must, of course, look at the bill and determine whether it states a case entitling complainant to relief. Briefly stated, the allegations are:

(1) Georgia Macomber Cottrell was the sister of the complainant, and wife of William Cottrell, who survived her. She died August 28, 1900.

(2) George Macomber gave large sums of money to his daughter, Georgia, which went into the hands of her husband, who had little money of his own when he married her. He suppressed the fact that he was handling her money and complainant was only recently informed of it.

(3) In 1877 George Macomber divided his property; that Georgia then received between $75,000 and $100,000; that complainant knew of this at the time, but he did not know until recently that it passed into the control of William Cottrell, or of the increase thereof, facts carefully suppressed by Cottrell.

(4) March 28, 1901, the Detroit Trust Company was appointed administrator of Georgia Cottrell, at the instance of William Cottrell. The inventory amounted to $137.15. William Cottrell at that time suppressed the facts that he held in his own name and control a large estate belonging to Georgia, amounting to $312,000 and upwards.

(6) On July 3d, William Cottrell, still suppressing said facts and concealing them from complainant, obtained from him and his wife an assignment of all their right, title, and interest in and to any and all of the estate and property of which Georgia Cottrell died seised, which assignment recited that it was the design to convey to him all interest of the assignors in the estate of Georgia Cottrell, and for this William Cottrell paid the sum of $55,000.

(7) William Cottrell thereafter caused the Trust Company to turn over to him the estate of $137.15, and to report that he was the owner as heir and assignee, and an order was made discharging the administrator and canceling its bonds.

(8) William Cottrell continued to suppress said facts until he died, August 11, 1907, at which time Georgia's estate had increased to $700,000, and William Cottrell's

own books showed that on January 1, 1907, the estate of Georgia in his hands was of the value of $445,000.

(9) Joseph Wolford was appointed executor of William Cottrell, and the appraised value of the estate was $858,855.59.

(10) Wolford, as executor, came into possession of the books and papers of Cottrell, and among them was an account book, containing an account wholly in Cottrell's handwriting, of which the following is a copy:

GREENVILLE, MICH., January 1, 1878.   Mortg.<br>Securities Inventory.

| | | |
|---|---:|---:|
| Jan. 1, 1878, I find in good securities_____ | $87,728 | 00 |
| That my wife, Georgia, has_____ | 78,000 | 00 |
| | $165,728 | 00 |
| Jan. 18, 1879, I find our joint property increased to _____ | 184,188 | 00 |
| Increase $23,429. | | |
| Jan. 1, 1880, I find an increase of $10,000, the past year having been a poor one in my business__ | 194,000 | 00 |
| Jan. 1, 1881, I find, besides all expenses _____ | 219,026 | 00 |
| Jan. 1, 1882, I find, being now in Lansing _____ | 241,642 | 00 |
| Jan. 1, 1883, I find two hundred fifty-seven thousand seven hundred and twenty-eight dollars_ | 257,728 | 00 |
| Jan. 1, 1884, I find two hundred and sixty-nine thousand four hundred and forty dollars, also house and lot_____ | 269,440 | 00 |
| Horses and buggies worth _____ | 5,000 | 00 |
| | $274,440 | 00 |
| Jan. 1, 1885, I find two hundred and ninety-two thousand one hundred and forty one dollars__ | 292,141 | 00 |
| Jan. 1, 1886, I find three hundred and three thousand two hundred and thirty-five_____ | 303,235 | 00 |
| Also house and lot, horses and buggies $10,000__ | 10,000 | 00 |
| | $313,235 | 00 |
| Jan. 1, 1887, I find three hundred and twenty-two thousand seven hundred and eleven dollars ___ _____ | 322,711 | 00 |
| Also house and lot, horses and buggies worth__ | 10,000 | 00 |
| | $332,711 | 00 |
| Jan. 1, 1888, I find three hundred and thirty-two thousand nine hundred and thirty-nine dollars _____ | 332,939 | 00 |

Also Belvedere farm ................ $8,000 00
House and lot, horses and buggies.... 9,000 00   $17,000 00
                                                 ─────────
                                                 $349,939 00

Jan. 1, 1889, I find three hundred and fifty-five
    thousand eight hundred and ninety-one dol-
    lars ....................................   355,891 00
Also Belvedere farm .................$7,000 00
House and lot............................ 3,000 00
Black mare.............................. 2,500 00
                                      ─────────  12,500 00
                                                 ─────────
                                                 $368,391 00

Jan. 1, 1890, I find three hundred and ninety-
    one thousand nine hundred and fifty-five
    dollars ...................................  $391,955 00
Jan. 1, 1891, I find mortgages .......$362,613 00
Notes................................. 23,638 00
Contracts............................. 16,859 00
Belvidere ......... ................. 8,000 00
House and lot.......................... 4,000 00
Lot, Greenville ...................... 1,200 00
Black................................. 3,000 00
Roan mare............................. 2,000 00
                                      ─────────  $421,310 00

### Securities.

Jan. 1, 1892, I find mortgages.......$372,784 33
Contracts............................. 16,825 84
Notes and bank stock ................ 29,538 68
Belvidere farm........................ 12,000 00
House and lot.......................... 4,000 00
Cash ................................. 8,099 57
Black mare............................ 3,000 00
Roan mare............................. 2,000 00
                                      ─────────  $448.248 42

Jan. 1, 1893, I find mortgages ......$372,014 49
Certificates ......................... 26,265 00
Contracts............................. 15,966 18
Notes................................. 27,544 42
Cash.................................. 5,000 00
Belvidere ............................ 12,000 00
Campbell house and lot............... 6,000 00
Phelps house.......................... 1,200 00
Residence, Sear ...................... 10,000 00
House ................................ 1,000 00

| | | |
|---|---:|---:|
| Switzer mortgage | $805 33 | |
| Goetz lot | 3,700 00 | |
| | | $481,495 42 |
| Jan. 1, 1894, mortgages | $399,176 36 | |
| Notes and certificates | 60,950 26 | |
| Belvidere farms | 12,000 00 | |
| Campbell house and lot | 6,000 00 | |
| Goetz lot | 3,700 00 | |
| Phelps lot | 1,200 00 | |
| Home | 15,000 00 | |
| Cash | 1,000 00 | |
| | | $499,026 62 |
| Jan. 1, 1895, mortgages | $414,776 00 | |
| Contracts | 9,985 00 | |
| Farms and rented houses | 30,200 00 | |
| Bank stock | 2,500 00 | |
| Certificates | 9,284 00 | |
| Deposits | 1,800 00 | |
| Moran farm | 4,500 00 | |
| Dayton farm | 4,000 00 | |
| Notes, $24,264; residence, $15,000 | 39,864 00 | |
| | | $515,909 00 |
| Jan. 1, 1898, mortgages | $425,930 00 | |
| Real estate | 97,209 00 | |
| Notes | 36,533 00 | |
| Bank stock and notes | 9,000 00 | |
| Contracts | 42,980 00 | |
| Chattel mortgages | 3,516 00 | |
| | | $615,168 00 |
| Jan. 1, 1899, mortgages | $434,754 00 | |
| Real estate | 99,500 00 | |
| Certificates deposit | 31,447 00 | |
| Notes and bonds | 26,211 00 | |
| Contracts | 38,960 00 | |
| Deposits | 5,372 00 | |
| New Haven farm | 2,500 00 | |
| | | $638,744 00 |
| Jan. 1, 1900, mortgages | $489,971 00 | |
| Real estate | 106,600 00 | |
| Notes | 24,265 00 | |
| Contracts | 40,710 00 | |
| Certificate deposit | 16,300 00 | |
| Bank stock | 5,000 00 | |
| School bond | 300 00 | |
| Deposit, Mt. Clemens | 1,000 00 | |
| Deposit, Lansing | 3,000 00 | |
| | | $687,146 00 |

Jan. 1, 1896, mortgages _____ $425,111 00
Contracts _____ 26,900 00
Farms and rented houses _____ 32,500 00
Notes _____ 25,853 00
Harrison note _____ 7,000 00
Residence _____ 15,000 00
Mortgages foreclosed, Wm. Jenney_ 2,000 00
Mortgages foreclosed, C. Schutt____ 2,500 00
Mortgages foreclosed, B. B. Crawford 5,800 00
Mortgages foreclosed, F. S. Spencer_ 1,800 00
Lansing cash _____ 2,000 00
Jenney decree _____ 3,000 00
                                 $548,964 00

Jan. 1, 1897, mortgages _____ $414,004 00
Property acquired by purchase and
     foreclosure _____ 60,000 00
Phelps contract _____ 700 00
Bank certificate _____ 9,049 00
Notes _____ 22,766 00
Bank stock _____ 2,000 00
Goetz house _____ 3,000 00
Campbell house _____ 4,000 00
New Haven farm _____ 2,500 00
Residence _____ 15,000 00
Belvidere _____ 12,000 00
Barron block _____ 21,000 00
                                 $566,019 00

Mortgages January 1, 1901, and Other Securities.

Mortgages _____ $508,100 00
Real estate _____ 57,800 00
Notes _____ 24,926 00
Contracts _____ 38,605 00
Certificates deposits _____ 10,660 00
Bank stock _____ 5,000 00
Deposit, Clemens _____ 6,476 00
Deposit, Lansing _____ 4,000 00
School bond _____ 250 00
Deposit Lakeview _____ 500 00
Geo. Ferris mortgage _____ 2,100 00
Joe Wilson mortgage, other notes _____ 5,160 00
                                 $665,077 00

Dec. 25, gave to Richard Cottrell farm at New
     Haven, Mich., of 55 acres, worth _____ $3,500 00
July 1, 1901, gave to George Macomber, Lake-

view, Mich., in good real estate and cheap at valuation_____ _____ _____ _____ $25,000 00

July 1, 1901, gave to Nora Macomber Miller of Greenville, Mich., in good real estate at low valuation, farms_____:_____ 25,000 00

July 1, 1901, gave to Allen Macomber, in his own note, $5,000 and int. on same $35 _____ 5,035 00

July 1, 1901, to Joe Clark and Allor attorneys, paid _____ _____ 1,000 00

Sept. 13, 1905, gave to Brother John Cottrell, 200 acres of farming land, Belvidere, Mich., worth (with good buildings and fences, well ditched) 12,000 00

$71,535 00

Dec. 20, 1900, deeded to Elmer L. Allor lots in Greenfield township, city of Detroit, being lots 42 to 50, both inclusive, of Ivanhoe, Smith, and Mathews' subdivision of lot 3 of Dickison's subdivision of part of the east half of the S. W. quarter of section 2, township 1, range 11 East, worth at least $150 per lot_____ $1,350 00

Jan. 30, 1902, to E. L. Allor, wedding present, assignment of Mulvey mortgage, on Detroit property, assignment to him and wife jointly, mortgage of Mary and Martha Mulvey_____ 661 00

To Allor_____ $2,011 00
Brought down from above_____ 71,535 00

$73,546 00

Jan. 8, 1903, to Brother John Cottrell, discharge of mortgage on his farm, mortgage of date Jan. 8, 1883, $1,000, 7 per cent. interest annually, nothing paid figures_____ $3,700 00

Gave Jack his notes in 1887 _____ 400 00
Gave Dick his notes in 1902 and 1904_____ 450 00

$78,096 00

### Find Securities Jan. 1, 1902.

Jan. 1, 1902, find mortgs._____$542,624 00
Bank deposit _____ 47,999 00
Real estate _____ 56,100 00
Contracts _____ 22,550 00
Notes _____ 18,859 00
New Baltimore contract_____ 4,500 00
Bank stock_____ 5,000 00

$697,632 00

162 MICH.—7.

Jan. 1, 1903, find mortgs. _____$591,128 00
Land contracts_____ 16,791 00
Real estate _____ 55,900 00
Notes _____ 16,863 00
Bank stock_____ 5,000 00
Deposit Lakeview _____ 800 00
Deposit Lansing_____ 5,000 00
Deposit Mt. Clemens_____ 31,000 00
Duncan mortg._____ 5,500 00
Lydia Mosher note_____ 1,500 00
Richard Loose mortg._____ 1,000 00
Anna Parker mortg._____ 2,000 00
Geo. Lovely mortg._____ 945 00
Davenport House, Lansing_____ 1,700 00

                                        $735,127 00

Jan. 1, 1904, find in mortgs. _____$639,675 00
        In notes_____ 21,684 00
        Land contracts _____ 20,225 00
        Real Estate_____ 50,200 00
        Frederick farm_____ 2,000 00
        Smith House, Three Rivers, Mich.___ 4,500 00
        Foreclosed mortgs._____ 3,183 00
        Deposit Lansing _____ 3,487 00
        Deposit Mt. Clemens_____ 24,000 00
        Bank stock_____ 5,000 00

                                        $773,954 00

Jan. 1, 1905, find in mortgs._____$716,886 00
        Notes_____ 19,295 00
        Land contracts _____ 14,985 00
        Real estate _____ 52,062 00
        Foreclosed mortgs. subject to re-
            demption_____ 8,900 00
        Deposit Lansing _____ 1,750 00
        Deposit Lakeview _____ 800 00
        Deposit Mt. Clemens_____ 7,590 00
        Bank stock _____ 5,000 00
        Note E. A. Alvord, Detroit_____ 225 00

                                        $826,493 00
                                    Jan. 1, 1905.
Jan. 1, 1906, find in mortgs._____$764,310 00
        Land contracts _____ 22,026 00
        Real estate _____ 26,000 00
        Notes _____ 17,056 00

| | | |
|---|---:|---:|
| Mortgs. foreclosed, subject to redemption | $11,710 | 00 |
| J. R. Trufant, mortg. foreclosed | 8,042 | 00 |
| Loans in transit to Lansing | 2,200 | 00 |
| J. W. Wolford | 3,500 | 00 |
| Bank stock | 5,000 | 00 |
| Deposit Mt. Clemens | 8,500 | 00 |
| Deposit Greenville | 300 | 00 |
| Lakeview | 240 | 00 |
| Notes and dividends and int. on deposit | 2,515 | 00 |
| | $861,399 | 00 |

Jan. 1, 1906.

Inventory List, Jan. 1, 1907.

| | | |
|---|---:|---:|
| Jan. 1, 1907, mortgs. | $811,630 | 00 |
| 3 Sheahan mortgs. foreclosed | 4,010 | 00 |
| Lonsby mortg. foreclosed | 18,000 | 00 |
| Real estate | 22,100 | 00 |
| Land contracts | 16,207 | 00 |
| Notes | 15,976 | 00 |
| Deposit Clemens | 28,041 | 00 |
| Mortg. in transit to Lansing | 8,800 | 00 |
| | $924,764 | 00 |

Find Jan. 1, '07.

We have thought best to print this entire account, as it appears to be the foundation of this proceeding. Complainant claims in the bill that Georgia owned something over one-half of the same.

(11) Complainant filed a claim in probate court for the allowance of $250,000, which he claimed as heir of Georgia. This claim was disallowed by the commissioners, and complainant took and perfected an appeal; that pending such appeal a compromise agreement was made in writing and this was approved by the probate judge, and an order entered authorizing the executor to pay complainant, and he did pay him the sum of $30,000, in full settlement of the claim, under such order. The probate proceedings and the settlement agreement are set out in the bill at length.

(12) While the claim was pending before the commissioners on claims, complainant repeatedly applied to and requested Wolford for information within his knowledge

concerning the interest of Georgia in the estate of William Cottrell and the validity of complainant's claim as her heir, and particularly requested him to disclose any facts within his knowledge or information which would support said claim, but "said Wolford misapprehending and being unmindful of his duties and obligations" as executor refused to give any information whatever, and Wolford withheld and suppressed all information concerning said account book, and that complainant signed the compromise agreement "without any knowledge or information concerning the disposition the said Georgia Macomber Cottrell had made of the securities, money, and property she had received from her father, and without any knowledge or information of the fact that she had placed, or permitted her husband to place, her estate in his name and control to be held by him commingled with his own property as the joint property of her, the said Georgia Macomber Cottrell, and said William Cottrell, as husband and wife, as is fully disclosed by said book account in the handwriting of said William Cottrell, so fraudulently and wrongfully suppressed from your orator by said Joseph W. Wolford; that he also withheld and suppressed from your orator the fact that the accumulations and increase of the estate of said Georgia Macomber Cottrell from January 1, 1878, to January 1, 1907, had been very large, and that on the basis fixed by the account of said William Cottrell of the joint property of himself and wife, her estate or interest January 1, 1907, was of the value of $445,240 and upwards; that by this fraudulent suppression of the facts your orator was induced to sign and deliver said compromise agreement; that if your orator had had any knowledge of said book account in the handwriting of said William Cottrell, he never would have entered into said compromise agreement."

(13) That after the payment of said $30,000 to complainant, Wolford disclosed said book account by producing it at the hearing of a petition filed by him regarding the payment of legacies. This petition is also set forth in the bill.

(14) On the hearing of said petition complainant first saw said account book.

(15) A petition for an administrator *de bonis non*, with a view to the filing of a bill in chancery for an accounting, was made and dismissed upon motion; the probate

court declining to hear evidence. An appeal has been taken from the order of dismissal and it is now pending in the circuit court.

(17) Complainant offers to pay the sum received in settlements into court, to abide its order.

The bill prays:

(1) The appointment of an administrator *de bonis non*, who shall be permitted to become complainant in this case.

(2) That the executors and heirs of William Cottrell be required to account, and the amount due from the estate of William to the estate of Georgia be determined and payment enforced.

(3, 4) That the assignment of July 3, 1901, and agreement of January 18, 1909, be set aside and complainant restored to all his rights as heir of Georgia Cottrell.

(5, 6) That the court take control and possession of the estates of William Cottrell and Georgia Cottrell by a receiver and administer and distribute both estates.

(7) General relief.

It is manifest from the foregoing that the only claim made in the bill as a ground for reopening this controversy is the alleged fraudulent suppression of the book account, but for which the assignment and compromise would preclude relief. The gist of the claim is that the two settlements should be reopened, because Wolford, administrator of Cottrell, did not disclose to a claimant evidence which claimant now asserts would have established his claim, had he known of and been able to produce it. It goes without saying that if the administrator of Cottrell had possession of a fund belonging to Georgia, justice demanded that he account, and pay over such sum as should be allowed. Such a claim was made by the complainant while Cottrell was alive, and suit was begun or threatened, and the matter was adjusted and settled upon the claim that Georgia had, prior to her death, transferred her property to William Cottrell by way of gift, and $55,000 was the price at which William Cottrell bought his peace, in July, 1901, and obtained a broad and comprehensive assignment of all complainant's interest in

Georgia Cottrell's estate. If this claim was untrue, and was believed by complainant, and was the inducement by which he was led to compromise his claim, it might perhaps be renewed and a bill might lie for rescission and to cancel his assignment in a proper case.

Cottrell died in August, 1907. Complainant thereupon filed a claim for a share of Cottrell's estate, upon the ground that it comprised a portion of property that belonged to Georgia at the time of her death, notwithstanding the fact that he had compromised the claim and assigned all of his interest to Cottrell. The petition does not appear to have been dated, signed by complainant, or sworn to by any one. It was made by his "attorney in fact" and sets up the assignment, and states—

"That about this time your petitioner made a claim upon the said William Cottrell for one-half of said estate as the heir at law of the said Georgiana Cottrell, but the said William Cottrell represented to your petitioner that she had practically no estate; that the negotiations with the said Cottrell continued over several weeks, Mr. Cottrell contending that his wife left no estate, but finally stated to your petitioner that he desired to present to each of the daughters of your petitioner, namely, Nora Miller and Georgia Macomber, certain property valued, as he claimed, at about $50,000, and stated that if your petitioner would make and execute an assignment to him of all his right, title, and interest to any and all estate and property of which the said Georgiana Cottrell died seised, that he would convey to your said petitioner's two daughters the property aforementioned, and your petitioner thereupon did make and execute and deliver to the said William Cottrell an assignment in due form of all the right, title, and interest in said estate, and the said Cottrell thereupon did convey and transfer to the said Nora Miller and Georgia Macomber certain real estate claimed by said Cottrell to be worth $50,000, but as your petitioner is informed and believes and charges the truth to be, was worth much less than that.

"Your petitioner further shows that he is informed and believes and charges the truth to be that the statements of the said William Cottrell, to the effect that the said Georgiana Cottrell died without any estate, were false

and were made for the purpose of defrauding and defeating your petitioner from recovering his proportion of said estate and for the purpose of obtaining from your petitioner an assignment of all your petitioner's right and interest in and to said estate, but that, on the contrary, the said estate did amount to some $400,000 and upwards, all of which was unknown to your petitioner."

It is noticeable that this petition made by his attorney, and set up in the bill, does not contain the allegation that complainant ever believed Cottrell's statements, and made the compromise in the bona fide belief that they were true. We have no means of knowing how much proof was taken or what trial of the real merits was had before the commissioners, and it does not matter, as this question before us must turn on the allegations of the bill. The claimant was defeated, and appealed. In January, 1909, an agreement was made which appears in the bill. We incorporate it entire in this opinion.

" Agreement entered into this 18th day of January, A. D. 1909, between Allen E. Macomber, Lake View, Montcalm county, Michigan, party of the first part, and Richard Cottrell, George Cottrell, John Cottrell, Copley Cottrell, Mary Watt, David Boyd, and John Boyd, heirs at law and distributees of William Cottrell, deceased, of the second part, and Joseph W. Wolford, as executor of the will of said William Cottrell, of the third part; Mary L. Cottrell, widow of said deceased, consenting thereto.

" Witnesseth :

" Whereas, George Macomber died in the year 1880, leaving surviving him two children as his sole heirs at law, namely, Allen E. Macomber, party of the first part, and Georgiana Macomber Cottrell, then wife of said William Cottrell, now also deceased, and

" Whereas, prior to the decease of said George Macomber he transferred and conveyed to each of his said children by way of distributing his estate, a large amount of property consisting of money, mortgages, and real estate, and

" Whereas, the portion so transferred and conveyed by the said George Macomber to his daughter, Georgiana Macomber Cottrell, amounted in value to $100,000, or upwards, and became and was received by her as her sole and separate property and estate; and

"Whereas, the said Georgiana Macomber Cottrell, upon receiving such property, committed the care, management, and investment of the same to her husband, William Cottrell, now deceased, and he took upon himself the care, management, and investment of the same for her benefit; and

"Whereas, for a time after the receipt of said property by the said Georgiana Cottrell, it was invested in her name, but later intermingled by the said William Cottrell with his own moneys, and with the profits and proceeds thereof was invested and from time to time reinvested in his own name, and so remained at the death of said Georgiana Cottrell on the 28th day of August, 1900, and still so remained at the time of his death on the 7th day of August, 1907, and yet remains as a part of his estate; and

"Whereas, administration of the estate of said Georgiana Cottrell was had in the county of Macomb, in this State, upon a petition of her husband, William Cottrell, wherein such estate was given as of the value of $100 and upwards, and in which procedings the said estate was appraised at the sum of $127, or thereabouts; and

"Whereas, during the pendency of such administration in consideration of certain real estate conveyed by said William Cottrell to the daughters of said Macomber, and in further consideration of a certain note for five thousand ($5,000) dollars made by Macomber and Bale, surrendered by said Cottrell to said Macomber, the said Allen Macomber, by an instrument in writing, bearing date July 3, 1901, sold, assigned, transferred, set over, released and conveyed to the said William Cottrell all his right, title, and interest in and to any and all of the estate, real and personal, of every kind and character, wherever situated of the said Georgiana Cottrell, deceased, which assignment or a true copy thereof was filed in the office of the judge of probate of Macomb county, as a file and record in the estate of said Georgiana Cottrell; and

"Whereas, afterwards and during the year last aforesaid an order based upon said assignment was made and entered in the matter of said estate of Georgiana Cottrell by said probate court, declaring the said William Cottrell sole heir at law and distributee of said Georgiana Cottrell, and assigning all of her said estate to the said William Cottrell; and

"Whereas, the said William Cottrell at the time of his

death on August 7, 1907, remained and was in possession and control of the property so received by his late wife, the said Georgiana Cottrell, from her father and of the proceeds and profits thereof, claiming the same as his own property; and

"Whereas, the said Allen Macomber now claims that the said William Cottrell, so obtained and received from him the assignment by falsely and fraudulently representing to him, the said Allen Macomber, that the said Georgiana Cottrell had, prior to her death, transferred her said property to him, the said Cottrell, by way of gift, and that she had no property or estate at the time of her death, and that he, the said Macomber, made and delivered the said assignment to the said Cottrell, relying upon and believing such false and fraudulent settlement; and

"Whereas, the said Macomber now asserts and alleges that the said William Cottrell always held, managed, and controlled said property, as the property of said Georgiana Cottrell and in trust for her, and that the same remained and was her property at the time of her death, and that his said representations as to gift were false and untrue; and that such property amounted in value at the time of her death to the sum of $400,000 and upwards, and at the time of his death to $500,000 and upwards; and

"Whereas, inasmuch as the said Georgiana Cottrell died intestate and without issue, the said Allen Macomber now asserts that he, as her sole heir and next of kin, was at the time of her death and is now, entitled to one-half of her estate and property so held in the possession of William Cottrell; and that said assignment so made by him ought to be set aside and held for naught; and

"Whereas, he also claims that he is legally entitled to damage from the estate of said William Cottrell for the fraud and deceit so alleged by him to have been practiced by the said William Cottrell; and

"Whereas, the said Allen Macomber asserts and alleges that in his judgment and belief he has, and is, in possession of and can produce before the proper tribunals, ample and sufficient legal evidence to maintain all of his claims and assertions aforesaid, and to procure said assignment to be set aside, and to prove the amount and value of the estate of said Georgiana Cottrell as aforesaid, and to establish said trust, and to obtain and maintain a judgment or decree awarding him the one-half of her said

estate, and to procure a judgment, decree, or award in his favor and against the estate of said William Cottrell for the aforesaid fraud and deceit; and

"Whereas, the said Allen Macomber filed before the commissioners on claims, in the matter of the estate of said William Cottrell, a claim for his alleged share of the said estate of said Georgiana Cottrell, or for damages for said fraud and deceit, or both, which claim was rejected by said commissioners, and is now pending on appeal in the circuit court for Macomb county; but

"Whereas, there exists a question of law as to whether the said Allen Macomber, party of the first part hereto, can prosecute his claim against the estate of William Cottrell in the manner now attempted, as aforesaid, or whether it may be necessary to file a bill in equity to set aside said assignment and for an accounting; or to procure the reopening of the estate of Georgiana Cottrell and the filing of such bill by her personal representative; and

"Whereas, there is in prospect long litigation before the party of the first part can recover what he claims to be equitably entitled to as heir at law and distributee of his sister, said Georgiana Cottrell, deceased, or damages for such alleged fraud and deceit; and

"Whereas, other difficulties and uncertainties may inconvenience, delay, or prevent recovery by the party of the first part of what he claims to be equitably or legally entitled to from or against the estate of said William Cottrell, deceased, he has, in consideration of such facts and situation, made a proposal to the parties of the second part to compromise and settle for the sum of thirty thousand ($30,000) dollars any and all claims which he has asserted, or may, or might assert against the estate of said William Cottrell, deceased, either directly or through the estate of Georgiana Cottrell, and all claim that he has, or might assert to or against the estate of Georgiana Cottrell or any part thereof, and to ratify and confirm in all respects the assignment heretofore made by him to the said William Cottrell.

"Wherefore the parties hereto have and do hereby agree as follows:

"'First: The party of the first part hereto, in consideration of the premises and the promises of the parties of the second part, hereinafter set forth, has promised and agreed, and does hereby promise and agree to and with other parties hereto, that he will accept and receive the

said sum of thirty thousand ($30,000) dollars, of and from said parties or either or any of them, if paid or tendered to him, or to his attorney or attorneys, within 30 days from the date hereof, in full payment, satisfaction, and discharge of any, all, and every claim which he has asserted or can, could, or might assert, against the estate of said William Cottrell, deceased, either personally or directly, or indirectly, through the estate of Georgiana Cottrell, or her personal representative; and in full payment for all his interest or asserted interest in or to the estate of said Georgiana Cottrell, deceased; and that upon such payment to him, or his attorney, or attorneys, of the sum of thirty thousand ($30,000) dollars within said 30 days from the date hereof, he will fully release and discharge the estate of said William Cottrell, and the executor thereof, of and from every claim and demand which he has or might assert against them, or either of them, either directly or indirectly, as heir and distributee of said Georgiana Cottrell, and that he will ratify and confirm the aforesaid assignment of July 3, 1901, to William Cottrell in all respects and will discontinue his aforesaid claim now pending on appeal in said circuit court without costs, and will execute and deliver to said parties and each of them, such further assurance in the premises as they or either of them may reasonably demand.

" '*Second:* The parties of the second part, in consideration of the premises and the promises of the party of the first part, hereinbefore set forth, promise and agree that by and with the consent of Mary L. Cottrell, the widow of said William Cottrell, deceased, and of his executor and of the probate court of Macomb county, to be obtained, the said sum of thirty thousand ($30,000) dollars, shall be paid to said first party out of the intestate portion of the estate of said William Cottrell, within 30 days from the date hereof and they unite in a request to said executor that he make application to said probate court for leave to effect such compromise, and if permission is granted by said court, that he make such payment as aforesaid.

" '*Third:* And the said Joseph W. Wolford, not having advised or requested such settlement, but consenting to the request of the parties of the first and second part, and in consideration of the premises herein set forth, and of the benefits accruing to the estate for such a settlement and adjustment, does hereby as such executor, promise and agree to petition said probate court for leave to make the

settlement aforesaid, on the terms aforesaid, and if he shall be authorized so to do by said court, and if said Mary L. Cottrell, widow as aforesaid, shall consent thereto in writing, that he will pay on or before said 30 days from the date hereof, to said party of the first part, the said sum of thirty thousand ($30,000) dollars out of the intestate portion of said estate for the purposes and to the ends aforesaid.'

"It being understood by all parties that this agreement is made and entered into for the purpose of securing relief from prosecution or defense of existing litigation, and from the prosecution and defense of any and all litigation of any and every kind that might possibly be instituted by the party of the first part, directly or indirectly, against the estate of said William Cottrell, or to recover any portion of or interest in the estate of said Georgiana Cottrell.

"In witness whereof, the parties hereto have hereunto set their hands and seals and executed this agreement in triplicate, the day and year first above written."

The fraud now alleged consists of the failure of Wolford to divulge to complainant the account hereinbefore set forth, and nothing else. This account is at most evidence that at the time of Cottrell's death he had in his possession certain property of his deceased wife, and the amount, and that Cottrell had falsified and fraudulently obtained a compromise. It is doubtful if even this can be properly said. It is contended that the first item indicates that he then had her property and that the presumption is that it continued hers, as the account does not expressly state the contrary. We do not feel so sure of this. Never afterward was the property mentioned in the statement, separated. This is at most an admission of Cottrell. He might have separated the securities in the way he did, and yet have had the right to claim them as a gift, but grant that he did not, the whole admission must be taken together. The parties were childless and it is not so very unnatural that at some time later the wife should have given this property to her husband, who was clearly competent to preserve property. But, aside from these considerations, we have stated all that can be claimed for this

testimony, viz., that Cottrell had it; that it was Georgia's when she died; the amount thereof; and that he falsified about it when the first settlement was made, thereby inducing its acceptance.

Now, that complainant knew all of these things (except perhaps the amount) when he settled the second time, is placed beyond dispute by the agreement made. It states the fact that Cottrell had his wife's property; that it was hers when she died (and consequently it had not been given to him); that he obtained the assignment by falsehood and fraud. Knowing all of these things, and stating that he believed he could prove them, and desiring to avoid a question of law as to procedure, and contemplating the possibility of a necessity for the filing of a bill in equity, and the prospect of long litigation which he desired to avoid, the complainant agreed to and did take $30,000 more to settle the controversy. All of this appears in the bill, and if ever a claim in litigation can be called settled, it would seem that the facts as stated in this bill accomplish it. We are of the opinion that the bill is without equity. It fails to state a case.

The decree is reversed and the demurrer sustained, and the bill dismissed with costs of both courts.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.